Johnson, J.
As shown by their answer defendants claim that the waters which are involved in the present controversy form part of a public bay connected with Sandusky bay, and not part of San-dusky river and Mud creek; that they are navigable in part, and have been continuously and uninterruptedly used by the public for fishing without objection until the plaintiff claimed the right to convert them to its own use.
Defendants claim the right of fishing within the portion of the premises above referred to, *145 wherever covered by water, to an extent that marketable fish may be found therein. They admit that the plaintiff is the owner of all the balance of the premises described in its petition, and deny that they have fished, or intended to fish, or have asserted any claim in or to any part of the premises other than as above set forth.
On the issues made by the pleadings the court of appeals found in favor of the defendants and dismissed the petition.
There is an extensive and detailed description of the locus in quo, and its history, included in an agreed statement of facts which covers about twenty pages of the printed record.
The plaintiff is the owner of about twelve square miles of land at the west end of Sandusky bay, a large portion of which is covered by water. Mud Creek bay lies west of a line drawn from Winous Point to Squaw Island and receives the waters of Mud creek. The channel of the creek through the bay has a depth of from five to seven feet, and from the channel the shore shoals to less depths on either side, and the adj’oining land becomes low and marshy. When the water is at good stage boats drawing not to exceed three to five feet can pass over it. During the season of vegetation, between June and October, a large part is covered with aquatic vegetation. At a point near Squaw Island, about half way between the mouth of Mud creek and Eagle Island, the Sandusky river, which is a much larger stream, empties into the bay.
The contention of the plaintiff is that the public *146 right of fishing in these waters exists only in the navigable portions thereof. The defendants do not deny the ownership of the land of the plaintiffs, but claim the right to fish within that portion of the bay where marketable fish may be found.
The waters in the particular locality involved in this case furnish an unusual example of the constant conflict between those claiming under a public right of fishing in public waters and those asserting exclusive rights under private ownership. The public rights of navigation and fishery in all public waters have long been recognized and protected in England and in this country.
Professor Angelí in his work on Tide Waters says at page 124: “Fishery in the sea, and in the waters which are made to flow inland therefrom by its egress and influence, constituting as it does, a great source of sustentation, has in all ages and in all countries been deemed of such importance, that it has ever been regarded a privilege open and common to all persons.”
The Ordinance of 1787 (Section 14, Article IV) contains a provision that “The navigable waters leading into the Mississippi and Saint Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory as to the citizens of the United States, and those of any other States that may be admitted into the confederacy, without any tax, impost, or duty therefor.”
In referring to the title which the several states hold in. the lands under the waters of the Great Lakes, the supreme court of the United States, in *147 Illinois Central Rd. Co. v. Illinois, 146 U. S., 387, say at page 452: “But it is a title different in character from that which the State holds in lands intended for sale. It is different from the title which the United States hold in the public lands which are open to preemption and sale. It is a title held in trust for the people of the State that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein freed from the obstruction or interference of private parties.”
Some matters formerly much in dispute have been settled by adjudications of this court, which simplifies the discussion here.
In Sloan v. Biemiller, 34 Ohio St., 492, it is held that the rule of the English common law, that the owners of land situate on the banks of non-tidal streams, though navigable in fact, are owners of the beds of the rivers to the middle of the stream, is not applicable to the owners of land bounding on Lake Erie and Sandusky bay. The right of fishing in Lake Erie and its bays is not limited to the proprietors of the shores; and the right of fishing in these waters is as public as if they were subject to the ebb and flow of the tide. In the opinion, Judge White says, at page 513: “And although the dominion over and the right of property in the waters of the sea and its inland waters were, at common law, in the crown, yet they were of common public right for every subject to navigate upon and to fish in, without interruption. * * * They were regarded as the inherent privileges of the subject, and ‘classed among those public rights de *148 nominated jura publica, or jura communia, and thus contradistinguished from jura coronae, or private rights of the crown.’ * * * The sovereign was the proprietor of these waters, as the representative or trustee of the public. In this country the title is vested in the states upon a like trust, subject to the power vested in congress to regulate commerce. Martin v. Waddell, 16 Peters, 367, 412; McCready v. Virginia, 94 U. S. (4 Otto), 391. That fishery in such waters as Lake Erie and its bays should be as free and common as upon tide waters, and alike subject to control by public authority, is obviously just. The reasons for regarding the right as public is as great in the one case as in the other; and we have no hesitation in saying that the right of fishing in these waters is as open to the public as if they were subject to the.ebb and flow of the tide.”
In Hogg v. Beerman, 41 Ohio St., 81, it is held that land covered by the water of a navigable land locked bay, or harbor, connected with Lake Erie, may be held by private ownership, subject to the public rights of navigation and of fishery, provided the holder derives his title from an express grant made, or sanctioned, by the United States. The court say, at page 95: “Where the grantor is the government, the thing granted government property held by absolute title, and no use of the thing granted to which the public is entitled is taken away, we see no reason for denying to the grantee ownership of the thing granted. * * * As was held in Sloan v. Biemiller, 34 Ohio St., 514, the right of fishing in Lake Erie and its bays is *149 as open to the public as if they were subject to the ebb and flow of the tide. No mere grant of the land covered by such waters destroys this public right.”
In State v. Cleveland & Pittsburgh Rd. Co. et al., 94 Ohio St., 61, it is held that the title of the land under the waters of Lake Erie, within the limits of the state of Ohio, is in the state as trustee for the benefit of the people, for the public uses to which it may be adapted. It is said in the opinion, at page 80:
“The state as trustee for the public cannot by acquiescence abandon the trust property or enable a diversion of it to private ends different from the object for which the trust was created.
“If it is once fully realized that the state is merely the custodian of the legal title, charged with the specific duty of protecting the trust estate and regulating its use, a clearer view can be had.
“An individual may abandon his private property, but a public trustee cannot abandon public property.”
Coming still closer to the locality involved in this proceeding, the case of Bodi et al. v. The Winous Point Shooting Club, 57 Ohio St., 226, involved practically the same questions and the same territory as are involved here, and practically the same issues were made. It was there declared:
“That the rights of navigation and fishing go together in the lakes and navigable bays of this state, has been held by this court, and seems settled. Sloan v. Biemiller, 34 Ohio St., 492.
“The navigable waters in dispute in this case, *150 form part of a public bay and not parts of the San-dusky river and Mud creek; and the circuit court erred in holding otherwise upon the facts as found in the record. Being part of an open bay, the public has the rights of navigation and fishing in its navigable waters.”
In that case the circuit court had found in favor of the plaintiff, the club, and had enjoined the defendants from fishing in the waters described in the petition. This court modified the judgment of the circuit court. The plaintiff in error calls attention to the fact that in the entry of the judgment this court found that the circuit court erred “in enjoining the defendants below from setting fishing nets and fishing in the waters described in said order of injunction,” but that subsequently it altered that entry by the insertion of the word “navigable” before the word “waters.”'
There was in that case a finding of facts by the circuit court, which contained a very elaborate description of the premises of the plaintiff and of the part in which the defendants claimed the right to fish. It disclosed also that defendants disclaimed any right to fish upon other parts of the club’s premises. We think it is clear from a reading of the record in that case that the insertion of the word “navigable” in the entry.of this court was made so as to prevent the implication that the defendants were held to be entitled to fish on the premises of the plaintiff in portions of the San-dusky river outside of the open public bay; or in the creeks and ponds on the territory of the club *151 adjoining the bay. But it is clear that the specific thing that the court decided, and which is the important point in this case, is, that the navigable waters in dispute form part of a public bay and not part of Sandusky river and Mud creek, and that the circuit court erred in holding otherwise upon the facts found in that court.
Subsequently the plaintiff brought suit against Jeppe Casper sen and others, in which it asserted the same rights and sought the same relief as it had asked for in the Bodi case. The club was still of the opinion that the territory in question was a part of Sandusky river and Mud creek. By agreement of the parties the finding of facts made by the circuit court in that case is included in the record in this case. In its conclusion of law the circuit court found: “That all those waters lying west of a line drawn from Slade’s Point, or Slate’s Point, to a point at the east end of Eagle Island and thence to South Point, and between Squaw Island on the south, Horse Shoe Island, on the west, and the shore line on the north, and lying between the shores aforesaid, form part of a public bay, and are not parts of the Sandusky River and Mud Creek; and being parts of an open bay, and navigable in part as aforesaid, the defendants as> members of the public have the rights of navigation and fishing in said waters. But the defendants and the public have no right in or upon any of said lands not covered by water to an extent that marketable fish may be found therein.”
The judgment of the circuit court in that case *152 was affirmed by this court, 66 Ohio St., 687, on authority of Bodi et al. v. The Winous Point Shooting Club, supra. The judgment of this court in that case was affirmed by the supreme court of the United States, Winous Point Shooting Club v. Caspersen, 193 U. S., 189, in which case the plaintiff in error asserted that the judgment that said waters are not those of Sandusky river and Mud creek, but those of an open and public bay in which the public had a right of fishing, was in contravention of the constitution of the United States, in that plaintiff was deprived of its property without just compensation.
It will be observed that the conclusion in the Casper sen case was that the waters in question formed part of a public bay and not parts of San-dusky river and Mud creek, “and being parts of an open bay, and navigable in part as aforesaid, the defendants as members of the public have the rights of navigation and fishing in said waters.” Having found that the waters in question are not parts of the river and creek, but are parts of an open bay, navigable in part, the court then states the clear and distinct conclusion, “that the defendants as members of the public have the rights of navigation and fishing in said waters.” The connotation is evident that in an open public bay, which is navigable, the public rights of fishery inhere in the entire open public bay, not limited within that bay to the particular portions which are navigable. To hold otherwise would not only give rise to innumerable and unceasing disputes as to whether *153 in the exercisé of the public right there were in particular instances wrongful encroachments beyond the navigable portion, although within a bay, but would also place an unwarranted limitation upon the right of the public in the public bays and waters of the state. The fact that the bay — the waters — the situs — is public, is itself sufficient to fix the rights of the public therein.
The second part of the syllabus in the Biemiller case, supra, reads: “The right of fishing in Lake Erie and its bays, is not limited to the proprietors of the shores; and the right of fishing in these waters is as public as if they were subject to the ebb and flow of the tide.” It will be observed that there is here no attempt to make limitations upon any particular part of the bay or the lake.
In Hogg v. Beerman, supra, it is said: “The private grantee of the land cannot do anything that will interfere with the channel, or hamper the passage of water craft through it. But he may, without the limits of the channel, erect fishing houses or such other structures as his means and the depth of water will permit; he may convert shallow portions into cranberry patches; he may fill up other parts and make solid ground. Although such action by him may lessen the water surface available for the fishing boats, the fishermen cannot complain. Such public right to fish always yields to any permanent improvement by the owner of the land on which the water rests.”
The only possible inference from this language is that any portions of the public bay which may *154 be without the limits of the navigable channel, and upon which the improvements referred to have not been made, are subject to the public right to fish.
It is everywhere conceded that the right of navigation is the superior right in navigable waters. In 11 Rui. Case Law, 1036, it is said: “The reason for the superiority of the right of navigation fnay be found in the circumstance that the piscatorial rights in the water may, as a general proposition, be exercised at numerous places in the water, but navigation is generally confined to certain definite localities. The mutual adjustment of the two rights in order that both may be reasonably enjoyed, therefore, requires that in the places available for navigation the fishing rights be secondary.”
We have no doubt of the praiseworthy motives which actuate the plaintiff company in many of its operations, as claimed by it. Such private rights as it has in the property, which it has properly acquired, should and will be protected, but we think it clear that they do not extend to the limits contended for, or permit building up of a monopoly in the public waters referred to.
The governmental power to prescribe regulations of fisheries in public and private waters resides in the legislature. It may adopt appropriate provisions concerning fishing and for the preservation of healthful fish and waters for the public benefit. It may of course prevent fishing in spawning grounds. There has already been legislation touching the subject, and it is to be presumed that as conditions require the general assembly will further safeguard the public, and likewise, in a spirit of *155 justice and equity, provide for the protection of the legitimate rights of property owners.
Judgment of the court below will be affirmed

Judgment affirmed.

Nichols, C. J., Wanamaker, Newman, Jones and Matthias, JJ., concur.